IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA      §
     §
v.      §     No. 5:21-CR-3
     §     JUDGE SCHROEDER
SAMUEL MORGAN YATES      §

## **INDICTMENT**

THE GRAND JURY CHARGES:

**FILED**

### **General Allegations**

JAN **1 4** 2021

At all times relevant to this Indictment:

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

### *The Defendant and Related Entities*

1.    Defendant **Samuel Morgan Yates** was a resident of Maud, Texas, in the Eastern District of Texas.

2.    Lone Star Tuning was a sole proprietorship located in Maud, Texas. Defendant **Samuel Morgan Yates** was the 100% owner of Lone Star Tuning, and its business address was located at his residence. Lone Star Tuning had no operations prior to January 2020 and generated no revenue.

3.    Defendant **Samuel Morgan Yates** maintained a bank account in his name at Credit Union 1, a federally insured financial institution located in Texarkana, Texas, in the Eastern District of Texas.

### *The Small Business Administration*

4.    The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and

small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5.      As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

### *The Paycheck Protection Program*

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

7.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

8.      A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

9.      PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### *Relevant Lenders*

10.     Lender 1 was a publicly traded real estate investment trust (REIT) that specialized in non-bank real estate and small-business lending. Lender 1 was based in New York, New York. Lender 1 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

11.     Lender 2 was a federally insured financial institution and a member of the Federal Home Loan system based in Salt Lake City, Utah. Lender 2 participated in the SBA's PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

12.     Company 1 was a publicly traded company that processed credit card payments, provided retail point-of-sale payment platforms, and offered small-business lending. Company 1 was based in San Francisco, California. Company 1 participated in

the SBA's PPP by, among other things, acting as a service provider between small businesses and certain banks, including Lender 2. Small businesses seeking PPP loans could apply through Company 1 for PPP loans. Company 1 would review the loan applications. If a loan application received by Company 1 was approved for funding, a partner bank, such as Lender 2, disbursed the loan funds to the applicant.

## The Scheme to Defraud

13.     Beginning in or around April 2020, and continuing until in or around May 2020, in the Eastern District of Texas and elsewhere, defendant **Samuel Morgan Yates** devised a scheme to defraud Lender 1, Lender 2, and the SBA by filing false and fraudulent applications for PPP funds.

## Purpose of the Scheme to Defraud

14.     The purpose of the scheme was for defendant **Samuel Morgan Yates** to unjustly enrich himself by obtaining PPP loan proceeds under false and misleading pretenses, including by making false statements about the operations of Lone Star Tuning and the intended use of the loan proceeds.

## Manner and Means

15.     In furtherance of the scheme, on or about April 14, 2020, defendant **Samuel Morgan Yates** electronically submitted a false and misleading PPP application to Lender 1 in the name of Lone Star Tuning seeking approximately $5,203,400 in PPP funds (the "Lender 1 PPP Application"). The Lender 1 PPP Application falsely stated that Lone Star Tuning's average monthly payroll was $2,081,386 and that the company had 412 employees. **Samuel Morgan Yates** signed the Lender 1 PPP Application. **Samuel**

**Morgan Yates** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

a. In connection with Lender 1 PPP Application, defendant **Samuel Morgan Yates** submitted what purported to be an Employer's Quarterly Federal Tax Return ("IRS Form 941") for Lone Star Tuning for the first quarter of 2020. On the purported IRS Form 941, **Samuel Morgan Yates** falsely claimed that Lone Star Tuning had paid wages, tips, and other compensation of $6,538,954.20 to 412 employees.

b. Defendant **Samuel Morgan Yates** also submitted with the Lender 1 PPP Application a false and misleading payroll journal that purported to list payroll and tax payments for each of the business's claimed 412 employees, the names of whom also appeared in a list of 500 random names found in the source code of a program posted on a popular online source code hosting and software collaboration platform.

c. In addition, defendant **Samuel Morgan Yates** submitted with the Lender 1 PPP Application a false and misleading payroll report for Lone Start Tuning that purported to show total payroll expenses of $4,893,261.80 between January 1, 2020 and February 29, 2020.

16. In furtherance of the scheme, on or about May 5, 2020, defendant **Samuel Morgan Yates**, electronically submitted a false and misleading PPP application to Company 1 in the name of Lone Star Tuning seeking approximately $533,216 in PPP funds (the "Lender 2 PPP Application"). The Lender 2 PPP Application falsely stated that Lone

Star Tuning's average monthly payroll was $722,788.44 and that the company had 145 employees. Defendant **Samuel Morgan Yates** signed the Lender 2 PPP Application. Defendant **Samuel Morgan Yates** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

> a. In connection with Lender 2 PPP Application, defendant **Samuel Morgan Yates** submitted what purported to be an IRS Form 941 for Lone Star Tuning for the first quarter of 2020. On the purported IRS Form 941, **Samuel Morgan Yates** falsely claimed that Lone Star Tuning had paid wages, tips, and other compensation of $2,555,438 to 145 employees.

> b. Defendant **Samuel Morgan Yates** also submitted with the Lender 2 PPP Application a false and misleading list of employees that included the many of the same names appearing in a list of 500 random names found in the source code of a program posted on a popular online source code hosting and software collaboration platform.

17. Defendant **Samuel Morgan Yates's** scheme caused intended losses of at least $5.7 million, based on the PPP loan applications submitted to Lenders 1 and 2.

**Counts One and Two**

Violation: 18 U.S.C. § 1343
(Wire Fraud)

18.     Paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19.     Beginning in or around April 2020, and continuing until in or around May 2020, in Jefferson County, Texas, within the Eastern District of Texas, and elsewhere, defendant **Samuel Morgan Yates**, on or about the dates specified below, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

Execution of the Scheme and Artifice to Defraud

20.     On or about the date specified below, defendant **Samuel Morgan Yates**, in the Eastern District of Texas and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 1 | April 14, 2020 | The PPP loan application on behalf of Lonestar Tuning electronically submitted from Texas, and routed interstate through Company 1's servers outside of Texas. |
| 2 | May 15, 2020 | Wire transfer from Lender 2 in the amount of $533,216 to an account controlled by **Samuel Morgan Yates** at Credit Union 1. |

All in violation of 18 U.S.C. § 1343.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
18 U.S.C. §§ 981(a)(1), 982(a)(2), and 28 U.S.C. § 2461

As a result of committing the offenses as alleged in this Indictment, defendant shall

forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1) and 982(a)(2) and 28 U.S.C.

§ 2461 any and all property, real or personal, involved in or traceable to property involved

in the offense, including proceeds obtained directly or indirectly from the offense, and the

following:

### Personal Property

$504,715.40 in United States currency seized from Account No. xx6734 at Red River Employees Federal Credit Union.

### Cash Proceeds

A sum of money equal to $28,500.60 in United States currency, and all interest and proceeds traceable thereto, representing the amount of cash proceeds obtained by defendant as a result of the offense alleged in this Indictment, for which the defendant is personally liable.

### Substitute Assets

If any property subject to forfeiture, as a result of any act or omission by defendant:

(a)     cannot be located upon the exercise of due diligence;
(b)     has been transferred or sold to, or deposited with a third party;
(c)     has been placed beyond the jurisdiction of the court;
(d)     has been substantially diminished in value; or
(e)     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any

other property of defendant up to the value of the above forfeitable property, including but

not limited to all property, both real and personal, owned by defendant.

By virtue of the commission of the felony offenses charged in this Indictment, any

and all interest defendant has in the above-described property is vested in the United States

and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1) and 982(a)(2)

and 28 U.S.C. § 2461.

A TRUE BILL

GRAND JURY FOREPERSON

STEPHEN J. COX
UNITED STATES ATTORNEY

DANIEL S. KAHN
ACTING CHIEF
FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

L. FRANK COAN, JR.
Criminal Chief

L. RUSH ATKINSON
Assistant Chief

LOUIS MANZO
Trial Attorney

JONATHAN R. HORNOK
Assistant United States Attorney

13- Jan - 2φ

Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 5:21-CR-___ |
| | § | JUDGE SCHROEDER |
| SAMUEL MORGAN YATES | § | |

## NOTICE OF PENALTY

### Counts One and Two

VIOLATION:                18 U.S.C. § 1343 (Wire Fraud)

PENALTY:                  Imprisonment for not more than twenty years; a fine
                          not to exceed $250,000; a term of supervised release of
                          not more than three years.

SPECIAL ASSESSMENT:       $100.00